The next case on the call this morning is agenda number 7, case number 106714, People of the State of Illinois v. Daniel Garstecki. Good morning, Your Honors. My name is Frank Andriano, and I represent Mr. Daniel Garstecki. This case comes before this court to resolve what I think is an important issue as a trial practitioner, and I see this case as having two fundamental issues. One is whether Supreme Court Rule 431 and, to a large extent, its civil counterpart, 234, which are identical, are mandatory. If you read what the appellate court wrote in the third district, I think that the third district got it right. The rule is mandatory. The rule used to say that a trial court may allow counsel to directly question the prospective jurors, and that that was subsequently changed by Supreme Court rule in 1997 from may to shall. The third district and first district, I think, have gotten it right in saying that when the Supreme Court rule changes from a may to a shall, it becomes mandatory. The second district viewed it differently and, I think, suggested that it's directory to what the judge ought to allow but not mandatory, and I don't think that that's supported by the history of the rule or a plain reading of the rule. I think the more interesting issue, and I think if you look at what the third district struggled with, is what is the remedy if this rule is not followed? And they looked to this court's decision in Houston and noted in Houston which- You're saying that the rule is mandatory. Yes. Just a couple questions as to what is mandatory. The rule says that the court deems proper. Correct. Right? So isn't that what's mandatory? How I would suggest the way to read that, as the court deems proper, such direct inquiry as the court deems proper, is that I think that that is going back to the direct inquiry. In other words, if an attorney is trying to inculcate the jurors, is trying to ask inappropriate questions, I think that the judge would absolutely have the authority to either sustain an objection or to stop the inquiry on his or her own. The judge can set reasonable limits on the inquiry. The judge can stop the inquiry if it's oppressive or there's something wrong with it. But what I don't think the judge can do is say, I know that the rule says shall, but in this courtroom, I don't allow it. Let me kind of hint to where I'm going here. You do not take the position, obviously, that the judge, based on what it shall deem proper, can decide that no attorney questioning would be advised. Right. And that's it. If the judge wants to say, and I think you have to give the trial judges flexibility. In Will County, we have a lot of big manufacturing stuff that kind of goes on. If there's a big explosion at one of the plants and there's 40 lawyers in the room and there's 20 defendants, the judge might say, you know, this is really complex. We're going to need a couple of days of questioning of these jurors. In this case, it's a little DUI case. I mean, if the judge wants to say, listen, you each got ten minutes. Anybody has an objection, shout it out. And, counselor, no inculcating the jurors. The judge has control. The judge has discretion. I don't have a problem with that. I think that the judge should have discretion. But you're saying that the judge has to at least can't make the determination that no inquiry is warranted. Right. And that gets to my second question. With that analysis, wouldn't you be writing the words, or the court deems proper, right out of the statute? No. Isn't your suggestion, and let me read it without those words. Right. And shall permit the parties to supplement the examination by direct inquiry for a reasonable period of time, something that you say he can do, depending upon the length of examination by the court, the complexity of the case, and the nature of the charges. What do the words, as the court deems proper, add to your analysis of the statute? I think that if you go to, as the court deems proper, would go directly back to the words before, direct inquiry. So the court can't deem a direct inquiry improper unless direct inquiry is allowed. If you look at both the history of it, of the statute, it used to say the court may. If we read the new rule to say the court that that just means may again, then the rule really didn't change. My specific question goes to a rule of statutory construction that we can't read something out of the statute. And I don't see where your interpretation of the statute would be any different without those words in there. Because without it, you know, shall, direct inquiry, reasonable period of time, length of examination by the court, complexity of the case, and the nature of the charges. What does or the court shall deem proper add to it? It adds nothing to your analysis. So I'm wondering what the words mean. They're there for some purpose. Right, and I think that that's making clear that the court has discretion to control the inquiry that counsel is allowed to make. But I don't think if you look at it in the entirety of the sentence, that it means that the court can say that given the complexity of this case, I don't think any direct inquiry is warranted. One last question and then I'm done. Sure. Assuming that the rule is mandatory, would you concede that nowhere in the rule does it state that the court must allow supplemental attorney questioning of the entire veneer in every case? No, I think it. He did allow questioning in this case, right, of the jurors. That self-reported. Right. And it says that of the prospective jurors, the rule starts out about the prospective jurors. And I think this really gets to the heart of what the amendment to the rule was intended to do and why the rule was changed. If what you're allowed to ask is only people who self-report issues, and I think the third district in another case, Plainfield v. Nowicki said, that if what you're doing is you're calling on the jurors to self-report, you're calling on the jurors who would otherwise probably be the least prejudiced. In other words, we're only allowed to ask questions of somebody who will, in an open courtroom with a judge watching, say I disagree with you and I have a problem. And I think that that's not what the rule is intended to do, because if you really look at it, you know, and kind of take the real world view of people walking up the steps, going into the courtroom, sitting down, being in a courtroom is an intimidating procedure. It certainly is for most people. They don't know whether they'll get in trouble or not for disagreeing with the judge. And what I'm saying is if you give us a fair opportunity to just ask some questions, we can get some feedback from these people, and then intelligently exercise our preemptory challenges. If we have to sit there, because these two things do go together. Did the court here invite counsel to submit additional questions? I'm sorry? Did the court invite counsel to submit additional questions? She told me I could submit additional questions. If you look at the record, after she completed her voir dire, I asked may I suggest certain additional questions, or ask certain additional questions, and was told no. But you did have the opportunity initially. To submit written questions to the judge for her to ask, and then after those were asked, asked can I follow up on those, and I was told no. And this is an issue in which I feel very strongly about, that we attorneys do play some role in ascertaining, if we're going to be called on to exercise preemptory challenges, we ought to be able to do it intelligently, and based on some input, some colloquy, some feedback from these jurors, we shouldn't be sitting there trying to guess if someone's no or yes to the judge's question is the same or different than the other person's yes. It doesn't have to be a lengthy process. It doesn't have to be an overarching process. The judge can certainly say, counsel you each have 15 minutes to question the prospective jurors, or 10 minutes, whatever the court deems proper in the context of the case, but what the court can't do respectfully is say, no, sit down, I'll do it. And I think it's unfair to the attorneys, it's unfair to the people who are coming there, because how do I know whether I should exercise a preemptory challenge if I don't have some fair brief moment to at least see or judge someone? And I can just tell you that as a practitioner, if I have to try a criminal case, I don't want to just presume that the only biographical information I know is that the man's a police officer, for example. Should I strike him? Well, it's a criminal case, I better. Unless I can talk to him, see if he seems to be a straight shooter. Is this somebody who will call balls and strikes? And if so, maybe I'll leave him on. But if you don't give me the opportunity, if all I know is background, name, age, and yes, yes, yes, can you be fair, yes, that tells me nothing. This is an important part of our trial process, and I think that one that deserves consideration. And I think that allowing the attorneys some fair opportunity can at least allow us to exercise our preemptory challenges based on something more than just stereotyping somebody based on their background and how they appear to us. Because I don't think it's an accurate way to select jurors or to exercise preemptory challenges. So it's your position that there has to be, there must be, an opportunity for counsel to have direct inquiry, even if it's limited? Even if it's limited, right. I think it's limited, it doesn't have to be for very long, depending on the complexity of the case. If you had a complex medical malpractice case, maybe the judge would feel that some, you know, if it's a high publicity case, sure. Maybe more would be warranted, in some cases less. But I still think it's, you know, it's still warranted and required by the rule, and I don't think, respectfully, that if you look at the history of how this got amended, that all of this work went into a special committee on this, then it goes to the Supreme Court Rules Committee. Everyone publishes it. It gets docketed with the clerk. In order to get docketed with the clerk, this proposed rule has to have substantial merit. Someone dockets it, goes through public comment. Also, it changes nothing. I don't think that that makes sense when you look at the history of the rule. The rule was intended to change the way in which juries were selected. It's your rule. And I would suggest that it should be followed as it was written and not ignored. Counsel, are we dealing with an abuse of discretion standard as to these issues? As to, I don't think, as to this particular one, I wouldn't say that it's abuse of discretion because the judge doesn't have discretion to read a Supreme Court rule and say no. No. I'm sorry. Just for the record, and your argument is wonderful, but there wasn't a no. There was a limitation. You may say that limitation was an abuse of discretion, but he did allow questioning of certain jurors. Well, that's – And I understand this is the self-reporting juror and everything that you just – Right. The argument you made. And I suspect if there was any limitation, you'd be making an effective argument. No. It says the prospective jurors. It does not – the rule does not state some prospective jurors who may self-report some problem with the propositions of the court, and then the court can – directs the inquiry and says, you understand that he's presumed innocent, and then gets someone to agree and then says, is there any follow-up? That's just – I don't think that's the intent of the rule. I don't think it's the language. Tell me if this is correct. You are not maintaining that any limitation to the – a part of the venari is an unacceptable limitation. You are not making that argument, are you? That – You're not saying he didn't permit questions of every member of the venari and that's a violation of the rule? I think it's prospective jurors. If there are prospective – Well, how does a prospective juror differ from every member of the venari? Well, I think it's probably – I think it's the – it's the – it's the same thing in that you call panels of four, you put them up there out of the back, and they sit down, and the judge asks each panel four, you know, goes through the zero questions, and instead of saying, well, counselor, do you have any questions, you have a total of 15 minutes, or whatever it is, the only time you get it is when you have the people who are – you can't be a prospective juror until you're called and put in the box. And if the people who are put in the box and you're saying strike or don't strike, yeah, I think you get to ask if somebody is actually going to be called from the back and questioned and considered to be put on, that you have a right to ask something. Let me get back to the question I asked before about the judge giving you the opportunity to submit questions. Did the judge limit those questions to the self-reporting information? No, she asked questions of – the submitted questions. Were those submitted questions supposedly within the boundaries of the self-reporting information given by the jurors, or could you ask questions that were not self-reporting? No. At the outset of the – prior to the voir dire, the judge instructed us, you know, or instructed me, give me the – you know, what questions do you want to ask? I provided them. She said I'll ask them. And she asked those questions of every single person who was called. Were you aware of the self-reporting information? Yes. When the jurors – So you knew that when you formed your questions and submitted those to the judge? No. I – no, the – I submitted questions before any juror was asked, was asked anything. The judge asked those questions. Then after that, some jurors reported some problem with what the judge said, and then the judge followed up with the prospective jurors about what they self-reported. So once I submitted the questions to the judge and she asked it, that's – you're done. You relied, my last question, on Houston. I thought in that case that the defendants' counsel waived compliance with the rules requiring voir dire be recorded. Right. The opposite is true here. Yeah, the opposite is true. I filed a motion in advance of trial and made the argument – the motion orally as well. And – I don't see the reliance on Houston. Well, no, and that's what the appellate court relied on Houston to say, well, we're not going to reverse and send this back for a new trial. If you look at what they said is that that was what they relied on, and I think that it's the incorrect analysis because Houston was a Strickland matter where the defendant bears the burden of proof. And I think that had Strickland – or had Houston been different in that the defense attorney would have insisted on compliance, then I think the result would have been different in Houston. At least that's – Mr. Andriano, I thought you might have indicated there's some distinction between the – who are considered prospective jurors, those that are called into the jury box in panels of four or those who are part of the entire minority. And does that make any difference in your argument? I don't think it makes – at least to me it doesn't make any difference because, you know, you get a whole room full of people that are called up by the jury commission. The judge goes through and he calls randomly four – or the clerk does it in four. The people in the back never have a chance to sit on the jury until they're called and put in the jury box and asked. But they are prospective jurors, right? Yeah. At that point they're – well, I guess they're all technically prospective jurors. And there's no requirement in criminal cases that the questioning be done in panels of four. No, I don't think so. But maybe somebody else does it different. I haven't seen it done different, but I'm sure somebody does. But that's the way it happened here. Sir? Harmless error. I don't think it's susceptible to a harmless error analysis because I don't think you can intellectually say what wasn't allowed to be asked and what we don't know that the responses were, that it's harmless beyond a reasonable doubt. In Houston, even in Houston where it was the burden on the defendant, this court still sent back the case to reconstruct the record of what occurred in Vordeer. And we know that you can have bystanders' reports and the judge was there. So there was something to recreate. In this case, there is nothing to recreate. It becomes an impossible exercise. And I think that that's why the appellate court, if you look at how they struggled with this, I think that once somebody makes an unequivocal request to comply with the Supreme Court rule on this matter, I think you send it back and then we avoid the case-by-case type of analysis that goes on with harmless error. I see my time has elapsed if there are no more questions. Thank you. Counsel, you may proceed. Good morning, Your Honors, and may it please the Court. My name is Sherry Wong and I'm an Assistant Attorney General here on behalf of the people of the State of Illinois. Your Honors, this Court should affirm the judgment of the appellate court for two reasons. First, the trial court complied with Rule 431A when following the conclusion of its direct questioning. It allowed the parties to pose supplemental questions directly to certain identified prospective jurors. Second, even if this Court finds that the trial court- You said following? Following the conclusion of its direct questioning of the prospective jurors. I thought counsel- I'm sorry, following- I thought counsel said something there. Following the conclusion of the direct questioning by the trial court to the entire jury veneer, the trial court allowed the parties to pose questions to certain identified prospective jurors. And second, even if this Court finds that the trial court did not comply with Rule 431A, any error here was harmless. Now turning to the first issue, although the people did not argue in the appellate court that the trial court complied with Rule 431A, the defendant does not argue that the people forfeited this argument in his reply brief or even in his opening argument to the Court this morning. Furthermore, this Court can affirm the trial court's judgment on any basis that is supported by the record. And here it is undisputed- counsel conceded this this morning- that following the conclusion of the trial court's direct questioning, he was allowed the opportunity to directly question certain of the prospective jurors. And in doing so, the trial court complied with Rule 431A. The record shows this. The defendant conceded this in his opening brief, in his reply brief. It's also in his motion for a new trial, which is contained in the record. The trial court also confirmed this fact at the defendant's hearing, at the defendant's motion for a new trial, saying that she allowed the parties to pose questions to certain members of the jury veneer. Now what the question becomes, and what the defendant is arguing now, even though it was a little unclear from this morning, is that what the trial court did here was insufficient to comply with Rule 431A, that under the rule, the trial court is required to allow the parties to pose questions to the entire jury veneer. But there's nothing in the language of the rule that requires the trial court to do this. Rather, the rule leaves open the question to whom that direct questioning is to be directed. And in doing so, the trial court has the discretion to decide to whom the direct questioning is to be directed. Now, as Your Honors quoted this morning, Rule 431A states that the trial court shall permit the parties to supplement the examination by such direct inquiry as the court deems proper for a reasonable period of time, depending upon the length of the trial court's inquiry, the nature of the charges, and the complexity of the case. Ms. Long? Yes. What's the practical difference between saying that the court may do something as it deems proper and that the court shall do something as it deems proper? Well, the question becomes whether the language of the rule is mandatory, directory, or mandatory permissive. And under the previous version of the rule, the language was mandatory permissive in that the rule stated the court may permit the parties to supplement the examination by such direct inquiry as the court deems proper. And the current version of the rule states that the court shall permit such direct supplemental inquiry as the court deems proper. And also this court added the additional factors that the trial court is to consider in granting or denying a party's request for supplemental questioning. Now, what the question becomes is what does the change from may to shall mean? And this court has generally held in the past that the use of the word shall in a rule indicates a mandatory directory intent. But this court has also held that the use of the word shall and that rule does not, it's not an inflexible rule. That the use of the word shall can be interpreted to be permissive depending on the context and intent of the drafters, which is this court. So certainly when this court changed the language from may to shall, it intended to change how trial courts were to conduct voir dire. Under the previous system, under Rule 431, which was previously Rule 234, the trial court had fairly unlimited discretion in how to conduct voir dire. It could, in its discretion, deem it proper to allow direct questioning or to not allow direct questioning. It was completely discretionary. Now under the rule, with the change from may to shall, the trial court is to consider the party's request. It's required to consider the party's request, and it must weigh its discretion in favor of granting the party's request. But it's not required to do so. That's the purpose of that court deems proper language. When the court is considering the request, the court is required to consider the factors that are articulated in the rule. It should consider the length of the trial court's inquiry. It should consider the nature of the charges and the complexity of the case. But if the court then, after considering all those factors and in its discretion, deems direct questioning proper, then the scope of the inquiry, the length, the manner, and to whom the questioning is to be directed, those are all questions that are left within the discretion of the trial court judge. And essentially, under that version of the rule, the idea is going to be decided and whether the trial court complies with Rule 431A, that's going to be decided on a case-by-case basis. It's going to have to be a case-specific inquiry. In your opinion, then, the may deem proper, would that allow for the court deeming any inquiry improper based on the facts of the case? Yes, Your Honor. It is possible that under certain facts and certain circumstances, the court could deem it proper in some cases to not allow direct supplemental questioning, but it would have to be determined under the facts and circumstances of that particular case. It could be a case where it's very simple. The nature of the charges is very simple. We don't have a long trial. There aren't going to be a lot of witnesses.  And counsel has not pointed to any question that he wanted to ask that the trial court did not ask. In that type of situation, it might be proper for the court to not deem direct supplemental questioning appropriate. But it could also be a circumstance in which you have a long murder trial with a lot of complex scientific testimony, in the which case it might be an abuse of discretion for the trial court to say, I'm not going to allow direct supplemental questioning to the entire jury veneer. It would have to depend on the facts and circumstances of each particular case. And in this case, the defendant has not shown that the trial court abused its discretion in conducting voir dire in the manner that it did. And it is an abuse of discretion standard, as this court held in People v. Loeb. Here, the defendant filed a motion prior to trial requesting to participate in the voir dire process. And at the hearing on the defendant's motion, the trial court specifically asked counsel what questions he would like to ask the prospective jurors. And counsel gave two questions. One, whether any of the prospective jurors had a personal or moral belief regarding the consumption of alcohol. And two, whether the prospective juror would view a police officer's testimony to be more credible than that of an ordinary citizen. The trial court confirmed with trial counsel that the issues in the case were not complex. Consider the fact that the nature of the charge was a DUI and told the parties that it was going to ask three questions. Two of the questions that counsel was going to ask, and also an additional question, whether any of the prospective jurors had ever donated money to or participated in an anti-drunk driving organization, such as Mothers Against Drunk Driving. And after the court told the parties that it was going to ask those questions, it gave the parties an opportunity to submit written supplemental questions that it would also ask. And then it conducted its own direct questioning. And then following the conclusion of that direct questioning, the trial court allowed the parties to select which jurors they wanted to question further. And the defendant identified seven jurors. These jurors were taken to the back hallway of the courtroom where the trial court conducted follow-up questioning with these jurors. And they gave the parties an opportunity to directly question these prospective jurors. So there is nothing in the process that the trial court conducted here that was an abuse of discretion. Now, the defendant here argues, and he relies upon this idea that jurors are likely to be more candid in response to questioning by attorneys and are intimidated by trial judges because being in a courtroom is an intimidating experience. But to the extent that that social science research is part of his argument, the important thing to remember is that the purpose of this appeal is to determine the language of Rule 431A. And there's nothing in the language of the rule that talks about the reason for allowing direct supplemental questioning. There's nothing in the committee comments that talks about the reason that this court changed the language from may to shall permit is attributable to this social science literature. And finally, the rule does allow for direct questioning. It simply allows the questioning in situations where the court deems it appropriate. So in a situation where the trial court receives a request from counsel, it's required to consider the request. It's even to weigh its discretion in favor of granting the request. But it's not required to do that. And in doing so, the rule as written recognizes that there may be benefits to direct attorney questioning, but that it's not appropriate in every single case. And here the defendant has not shown that the trial court, in limiting the questioning to only certain members of the jury veneer, that was an abusive discretion. If this court has no questions regarding the interpretation of the rule, I would just move on to the second issue about whether or not harmless error applies. Assuming that this court finds that the trial court did not comply with Rule 431A, the defendant appears to argue that harmless error is inappropriate and that per se reversal of his conviction is required for two reasons. First, he argues that there is a federal constitutional right to be able to ask questions to the jury veneer and that where there has been a violation of this alleged constitutional right, that constitutes structural error, which requires automatic reversal and remand for a new trial. And second, he also appears to argue that this court's rules are mandatory. And because this court's rules are mandatory and have the force of state law, then harmless error view is inappropriate and per se reversal is required. Now, turning to the first issue, at most, what the defendant has alleged here is a violation of one of this court's rules. It's a violation of state law. And the defendant here has not cited any case which has held that there is a violation of state law.  does this court have the right to ask those questions to the entire jury veneer? The claim that the defendant is raising here is essentially the same claim that was raised and rejected by the Supreme Court recently in Rivera v. Illinois. In that case, the Supreme Court examined the erroneous denial of a preemptory challenge, which is a state law right that's given to criminal defendants. And the court held that in examining that denial, where there was that violation, state law determines the remedy for that violation, not federal law. Here, the defendant is alleging a violation of one of this court's rules. And in doing so, he appears to argue that this rule, which was created to ensure that he received an impartial jury trial, that results in structural error. But the Supreme Court recently held in Rivera and also in Georgia v. McCollum, that even where state law creates a right that is used as a means to achieving an impartial jury trial, the violation of that right does not result in the violation of his right to an impartial jury trial. So here, the defendant has not identified any situation in which federal law would be implicated in this issue. But the question does become then, what is the result of a violation of one of this court's rules? And the defendant appears to argue that whatever a rule, one of this court's rules, has been explicitly invoked and has been denied, per se reversal is required. And that can't simply be the case. This court's precedent in People v. Houston and also in People v. Rivera demonstrates that even where there is a violation of one of this court's rules, per se reversal is not always required. And the defendant has not cited a case which has held that per se reversal is required every single time one of this court's rules has been violated. Now, certainly this court's rules are mandatory. However, constitutional rules are mandatory. Rules that were articulated by the Supreme Court in Apprendi v. New Jersey and Doyle v. Ohio, the Confrontation Clause, those are all mandatory rules. But violations of those rules are still subject to harmless error analysis. They're not subject to per se reversal. Per se reversal is limited to those situations in where there has been structural error. So what the defendant is arguing here is that wherever there's been a violation of one of this court's rules, the remedy is automatic reversal in every case, which is the remedy for structural error. And as the Supreme Court held in Rivera, structural errors are limited to very rare situations, situations where you have a biased trial judge, where you have a denial of the right to counsel of choice, where you have the denial to the right to self-representation at trial. And this is not the type of situation that we have here. So even if this court finds that there is an error, harmless error review applies. And applying harmless error review, this court should find that the error here was indeed harmless. Now, the people do bear the burden of persuasion with respect to showing that the error was harmless. But the people can show that that error was harmless for two reasons. First, the trial court's questioning was sufficient to ensure that the defendant received an impartial jury trial. The defendant in the appellate court or in this court has not identified any question or area of questioning that he was not able to pursue in front of the trial court, or a question that the trial court did not ask that he wanted to ask. And the record shows that the trial court's questioning was thorough and was  The question was whether the defendant should have been removable for cause, or should not have sat on that jury for cause, did not sit on that jury. And second, there was overwhelming evidence showing that the defendant was driving under the influence of alcohol. The officer at trial testified that the defendant was swerving back and forth between lanes. He had the odor of alcohol on his breath. He also had glassy bloodshot eyes. The defendant failed three sobriety tests after he was taken to the police station. The defendant refused to take a breathalyzer test, which this court has held to be circumstantial evidence of the defendant's guilt. So the evidence here at trial shows that there was overwhelming evidence establishing that defendant was driving under the influence of alcohol. So even if this court does find that there was error in the trial court's failure to comply with rule 431A, any error was harmless. This court has no other questions. We'd ask that you affirm the judgment in the appellate court. May it please the court, counsel. My name is Ted Hamel, and I also represent Daniel Garcecki. I first may want to go over a couple of points with the court before any questions. There was a specific motion, this court well knows, to ask for this voir dire, based upon the language of the Supreme Court rule. Justice Thomas made a point, how do you interpret the part of the rule? And, again, to read the rule, it says, as the court correctly pointed out, as the court deems proper for a reasonable time period on direct inquiry, what I submit to the court is the court deems proper would go to scope, would go to time, would go to what questions would be asked based upon the court's initial inquiry of the voir dire to the entire panel. So when it says to, as the court deems proper, yes, as the court deems proper, you can't, attorney, run off on a tangent on different issues that have no basis before the court on the voir dire process. Again, the constraint is to time and complexity, but not as constrained as to actually ask the questions, because I submit to the court there's a world of difference between a judge, which is obviously a higher authority, and an attorney asking the question. You get different body language, you get different mannerisms, you get different speech inflections, you get a different way of asking, which would be helpful to the attorney in assessing whether or not I'm going to use my preemptory challenge on this particular jury or whether or not I'm not on this particular jury. But I don't have that same information when the court asks one of the routine questions, but you have the four routine questions of 431B, but any other questions, if they're standard, yes, yes, yes, yes, no, no, no, no, it's a little different, even if it's the same question, if the attorney asks the question to the voir dire panel. The third district court said it was a right to do it. Now, obviously, this court can change that in a heartbeat, but the third district said it was a right and limited the scope and duration. Not limited to just those, the column, the eight, that were selected for additional inquiry, but the entire panel, because then you're just limiting any further inquiry to eight selected individuals. Again, it's not the issue of the question. I don't want to make the question the issue. It's not whether Mr. Andreano at the trial court gave two questions for inquiry, but it's one, the initial questions plus any follow-up questions within the scope. Again, I say it's who asked the questions and then the response to it when making this decision. The attorney is not an authoritative figure. The attorney is the attorney in the case. The judge is the authoritative figure and the judge makes all the rules in the court. The state is arguing that this change in the statute went from permissive to almost quasi-permissive, but not mandatory. And, again, if you read the statute with the idea that, as the court deems proper, is limiting, you shall let the attorneys ask the questions, but you're not going off on a tangent, you're not going off on three days of questioning, you're not going off on areas that are just not the subject of this case or the complexity of this case, but you are allowed to ask some questions. The rule is to filter the attorney. The rule is to keep them here in court on this particular case. The rule is not to go off on any tangent in time and scope. The defendant obviously, as the court well knows, has a right to a fair and impartial jury, free of bias, hopefully free of biases, but from the questions that the attorney poses to the juror is fundamental in order to elicit the response and see what kind of response, kind of inflection in voice, kind of yes, rolling eyes from an attorney asking questions rather than from the court. Because you sit proper, you stand proper, and you address the court proper. People address attorneys a little bit different than the way they do the court. So if you have a right to a fair and impartial jury, the rule, the way it stands, should allow it. Like the third court just said, you have that right, you should be allowed to ask it. Just giving the court questions, because I see it as a two-way approach. You give the court questions to supplement in the beginning, and the direct exam is for any follow-up, within the scope of the answers originally. The hallway questions are unique. I call them the hallway questions because the court does not want to shame or embarrass a prospective juror in the connotation of the answer that they may be giving in front of the entire panel. And I agree with that. Go back hallway and ask additional questions. But something may be raised in that question, not thought of in this particular case, that would be fundamental to the entire voir dire. And again, Mr. Adriano was, he did ask, he wanted additional questions to the entire voir dire. And the answer was no. And this is not going off for hours, it's not going off for a half hour. She can limit the scope, she can limit the duration of time, but it's completely different when this court asks me a question. Can I ask you a question? Yes. Is your argument now that counsel should have been allowed to question the whole voir dire? Yes. 40 people on the voir dire? Well, both, again, it goes to the... I'm just trying to visualize what we're dealing with. Do you know how many people were on the voir dire? From practice in Will County, Judge, usually they bring in about 30 to 40 people, they sit them in the gallery, and then they call up four at a time and put them in the jury box. I think you're probably accurate with that. My question is, is the issue in this case that counsel should have been allowed to question each member of the voir dire? Either in the entirety or in the set group, but within the whole constraints, because nobody leaves the room, Judge. Sorry, Justice. They call up four individuals and put them in what they call the jury box, and they ask them questions. It wasn't four people we were talking about. Yes. Was it four people that we were talking about if we questioned the whole voir dire? I would say the entire voir dire, but the courts usually allow any questions to go towards, in different courthouses, to the four that were selected first, or the two, however the court does it, the four or the two. So that, again, goes to scope and duration. But, again, it's those questions that you could ask the entire voir dire, but you can only ask it. How many jurors were questioned by counsel? Well, he wasn't allowed to ask questions of the entire voir dire of it. He submitted questions. I understand that, but he questioned some. I think any questions came from the, when there was a self-reporting problem in the hallway. What you referred to as the hallway jurors? The hallway jurors, yes, Judge. I apologize for that. No, that's all right. But how many hallway jurors were there? Seven or eight hallway jurors. Thank you. Counsel, was there a limitation on the questions in the hallway context? Limitations as to the response from, I believe the response from the answers that they gave, but I don't have a transcript of that today to give the exact limitation in the hallway course of the selection process. How many questions, what they could ask? The normal proceeding is when you have the hallway, if there's any question. Was there a limitation on the attorney questioning the jurors in the hallway? I can't give that answer to the court. So I understand better. You're not saying that you're not, were you allowed to question any of the jurors in the courtroom? Not in the courtroom. We submit questions to the court to ask. And then Mr. Angiano did ask again, would it be all right if I asked Your Honor to consider general questions to the entire borderer? If I asked Your Honor to consider general questions to the entire borderer, it was no. How did the self-reporting come in? Were they the people that were taken in the back hall? Yes. If an issue arose or they didn't feel comfortable asking, answering the question, an issue may arise where they don't feel comfortable answering the question in the entire public of the 40 people that have been brought down from the jury commission. Sometimes they don't feel comfortable answering those questions. Mr. Adriano was the trial attorney in this case, right? Yes, he was. I didn't hear any portion of his argument he can even answer as to Justice Kilbright's question. Was there any cutoff with respect to the questions that were in the hall, the jurors that were questioned in the hallway? And I can answer that, that it was allowed to follow up only on what the judge specifically asked that juror. Which were questions that you had originally submitted, right? Or that someone self-reported a problem with either alcohol in their family or a problem with the consumption of alcohol or some other issue. The judge then conducted further inquiry of that juror. And as to the self-reported issue after the judge completed her questioning of the juror, then would say, after the juror said yes or no, is there any follow-up to what I have asked? And you were able to ask every question with respect to that inquiry in the hallway? As to every question that the juror self-reported. Well, that's the issue. You didn't want to know if he went skydiving. I mean, right, so the issue, you gave questions to the judge, is that right? That is correct. All right, the judge asked those questions. That is correct. Some gave answers that he allowed you to follow up on in the hallway with those jurors. True or not? I don't believe that that's accurate, because the judge followed up. The judge asked the questions, and then after she asked the questions, she did say, is there anything else on this issue? And this is why, if you look at the record, I asked it to ask additional questions of everyone. But as to those people who self-reported some issue, there was nothing more to follow up on, at least in my view. But to follow up, you weren't restricted then when she said, are there any follow-up questions? Did she impose any additional restrictions on the questions you would ask? The only thing I could ask is what specifically the person self-reported, and that would be clarification of what their answer was to her, of those eight people. Counsel, this is all in the record, isn't it? It should have been. There's a microphone the judges have that they carry out into the hall. I didn't make an issue of this. The microphone, for whatever reason, don't work. The electronic recording, it's one of those technical glitches that I can't explain. Thank you. Your time is up. Thank you, Judge. Case number 106714, people of the state of Illinois versus Donald Garstecki.